HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
Tel: 212-592-1400
Fax: 212-592-1500
Joshua J. Angel
Paul Rubin

Attorneys for the Defendant Fred Leighton Holding, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FRED LEIGHTON, LTD., FRED LEIGHTON,     :   Electronically Filed
LLC, FRED LEIGHTON AND GLORYA     :
LEIGHTON AS TRUSTEES OF THE FRED     :
LEIGHTON REVOCABLE TRUST, FRED     :   Civil Action No.: 08 Civ. 4454 (PKL)(RLE)
LEIGHTON AS TRUSTEE OF THE FRED     :
LEIGHTON ANNUITY TRUST, FRED     :
LEIGHTON AND MARA LEIGHTON,     :   <u>NOTICE OF REMOVAL</u>
    :
                  Plaintiffs,     :
    :
        -against-     :
    :
FRED LEIGHTON HOLDING, INC. (f/k/a     :
SAMBA I, INC.) and RALPH ESMERIAN,     :
    :
                Defendants.     :
    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT,
         FOR THE SOUTHERN DISTRICT OF NEW YORK

      Defendant Fred Leighton Holding, Inc. (f/k/a Samba I, Inc.) ("FLH" and with defendant

Ralph Esmerian, the "Defendants") by FLH's attorneys, Herrick, Feinstein LLP, respectfully

applies for the removal of this civil action to the United States District Court for the Southern

District of New York, with the intention that this action, upon removal, shall be referred to the

United States Bankruptcy Court for the Southern District of New York, and in support thereof

respectfully states as follows:

1.    On April 15, 2008, FLH and certain of its affiliates ("the Debtors")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The Debtors' cases have been jointly administered under case number 08-11363 (RDD) (the "Bankruptcy Cases").

2.    In this Notice of Removal, FLH is exercising its right pursuant to 28 U.S.C. §§ 1441 *et. seq.* and 1452, *et. seq.,* and Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to remove a pending state court action entitled <u>Fred Leighton, Ltd. et. al., v. Fred Leighton Holding, Inc. (f/k/a Samba I, Inc.) and Ralph Esmerian</u>[2], Index No. 602533/07 (the "State Court Action") from the Supreme Court of the State of New York, County of New York (the "State Court"), to the United States District Court for the Southern District of New York, with the request that the State Court Action, upon removal, be transferred to the United States Bankruptcy Court for the Southern District of New York, (Honorable Robert D. Drain, U.S.B.J., presiding) for the reasons set forth herein.

3.    Plaintiffs Fred Leighton, Ltd., Fred Leighton LLC, Fred Leighton and Glorya Leighton as Trustees of Fred Leighton Revocable Trust, Fred Leighton as Trustee of the Fred Leighton Annuity Trust, Fred Leighton and Mara Leighton (collectively, the "Plaintiffs" or the "Leightons") filed the State Court Action on or about July 26, 2007.  A copy of the Summons and Complaint from the State Court Action is attached as <u>Exhibit "A</u>" in accordance with Rule 9027(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). A copy of the

---

[1]  In addition to Fred Leighton Holding, Inc., the following entities are debtors in these related cases: Fred Leighton LLC, Phoenix Nevada 1, LLC, Fred Leighton BH LLC, Calypso Mines LLC, Endymion, LLC, Foxtrot LLC, and Tango LLC.

[2]  FLH is advised that the other named Defendant, Ralph Esmerian consents to removal.

Defendants' Answer in the State Court Action is annexed as "Exhibit B". If any additional documents relating to the State Court Action are required, FLH will submit such documents.

4.     The State Court action involves the sale of a jewelry business.  The Plaintiffs allege that the Defendants have failed to honor their contractual commitments under the written agreements that encompassed the sale of the Leightons' business (the "APA") to the Defendants. In their Complaint, the Plaintiffs also requested that the State Court, *inter alia*, enter a declaratory judgment that the Defendants are not owed anything further under the APA and that the Leightons have fully complied with their attendant contractual obligations.

5.     As set forth in their Answer, the Defendants assert that the Plaintiffs breached their obligations under the APA, along with certain employment agreements and non-compete agreements which were entered into in conjunction with the sale of the jewelry business.  As such, they are required to indemnify and/or pay damages to the Defendants in accordance with the terms of those agreements. The Defendants had previously provided notice of the Plaintiffs' breaches of their representations and warranties under the APA.

6.     The Defendants further contend in their Answer that the Plaintiffs' business records were rife with inaccuracies and that their records failed to comply with Generally Accepted Accounting Principles ("GAAP") in direct violation of the covenants of the APA. As a result of the Defendants' failure to comply with GAAP, the Plaintiffs presented an inaccurate state of the seller's financial condition which led to overpayment by the Defendants. In addition, the Defendants maintain counterclaims against the Plaintiffs for, *inter alia*, a) breach of the APA, b) failure to record unpaid commissions in accordance with GAAP, c) failure to record certain additional liabilities in accordance with GAAP, d) failure to record a certain sale at the Debtors' Las Vegas, NV location in accordance with GAAP, e) failure to fully disclose all liabilities to the

Defendants, f) failure to record a special order in accordance with GAAP, and g) failure to pay rent, all resulting in a damage amount to be determined at trial.

7.    In addition, as delineated in the Answer, the Defendants maintain additional counter claims against the Plaintiffs for a) fraud in the inducement, b) fraud, c) unjust enrichment, and d) breach of fiduciary duties.

8.    The Southern District of New York encompasses New York County, which is where the State Court Action is pending.

9.    The State Court Action was initiated prior to the commencement of the Bankruptcy Cases. This Notice of Removal is timely pursuant to Bankruptcy Rule 9027(a)(3) as it has been filed within 90 days of the filing of the Debtors' Bankruptcy Cases.

10.    The Debtors' Bankruptcy Cases are presently pending before the Honorable Robert D. Drain, U.S.B.J., United States Bankruptcy Court for the Southern District of New York. FLH respectfully submits that the Action should be removed to this Court pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.

> Bankruptcy Rule 9027(a) provides, in pertinent part, as follows:
>
> (2)    *Time for Filing; Civil Action Initiated For Commencement of the Case Under The Code.* If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under 5362 of the Code, or (C) 30 days after a trustee qualifies in a Chapter 11 reorganization case but not later than 180 days after the order for relief.

11.    At the time of the commencement of the Bankruptcy Cases, the State Court Action was pending and, until the filing of this Notice of Removal and the filing of a copy of this

Notice of Removal with the State Court, continues to be pending before the State Court. However, upon the commencement of the Bankruptcy Cases the State Court Action was effectively stayed as to the Debtor, FLH, pursuant to section 362(a)(1) of the Bankruptcy Code.

12.    Pursuant to 28 U.S.C. § 157 and the Standing Order of Reference from the United States District Court for the Southern District of New York dated July 10, 1984 referring all cases under Bankruptcy Code and any or all proceedings arising under the Bankruptcy Code or arising in or related to a case under the Bankruptcy Code to the Bankruptcy Court (hereafter, the "Standing Order") (Ward, Acting C.J.), the Bankruptcy Court presiding over the Bankruptcy Case has jurisdiction over the causes of action asserted in the State Court Action under 28 U.S.C. § 1334.

13.    Although, as a procedural matter, removal is to the District Court, upon removal to the District Court, pursuant to 28 U.S.C. § 157(a) and the Standing Order, it should be automatically referred to the Bankruptcy Court. FLH respectfully submits that this Action should be thereafter referred to the Honorable Robert D. Drain, as His Honor is fully familiar with the facts and circumstances of the Debtors' Bankruptcy Cases.

## THIS COURT HAS JURISDICTION TO ADJUDICATE THE ACTION PURSUANT TO 28 U.S.C. § 1334 (b)

14.    The jurisdiction of the bankruptcy court is delineated in 28 U.S.C. § 1334(b), which states that "the district courts shall have original but not exclusive jurisdiction of all proceedings arising under title 11, or arising in or related to cases under title 11." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).

15.    Section 1334 provides the jurisdictional basis for removal of an action pursuant to 28 U.S.C. § 1452(a).    District courts (and bankruptcy courts) may exercise three types of

jurisdiction pursuant to the statute. They are "arising under" and "arising in" jurisdiction, which courts regard as a type of federal question jurisdiction, and "related to" jurisdiction. Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.), 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003). A bankruptcy judge may hear and determine any "core proceeding" that "arises under" or "arises in" an action under title 11 but may only hear a "non-core" proceeding if it is "related to" a bankruptcy action. Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc., 209 B.R. 307, 310-11 (S.D.N.Y. 1997). The Second Circuit has construed a bankruptcy court's core jurisdiction "as broadly as possible" so as to be "close to or congruent with constitutional limits." Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail), 304 F.3d 223, 229 (2d Cir. 2002) (internal quotations and citations omitted). This jurisdictional reach is "essential to the efficient administration of bankruptcy proceedings." Id.

16.    The claims and causes of actions underlying the State Court Action are "core proceedings" within the meaning of inter alia, 28 U.S.C. §157(b)(2)(A),(B) and (C) in that the State Court Action concerns, inter alia, (i) matters concerning the administration of the Debtors' estates, (ii) allowance or disallowance of claims against the estates and (iii) counterclaims by the estates against persons filing claims against the estates. The claims at issue turn on the conduct of the Debtors as well as their incurred damages. Moreover, if the Complaint survives initial motion practice, the State Court Action will require substantial and likely costly discovery against the Debtors, as it involves the nature and scope of the information provided by the Debtors to Plaintiffs in connection with the APA. In addition, there are claims for contractual indemnification and the Defendants have asserted counter-claims against the Plaintiffs. For all these reasons, the Court has "arising in" jurisdiction.

17.     As set forth *supra*, this Court has original jurisdiction over this State Court Action pursuant to 28 U.S.C. § 1334(b), and it is hereby removed to this Court under the provisions of 28 U.S.C. §§ 1446 and 1452(a).

18.     28 U.S.C. § 1452(a) provides as follows:

> (a)  A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit's police or regulatory power, to the district court where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title

19.     The State Court Action, including all claims and causes of action asserted therein, is a civil action other than a proceeding before the United States Tax Court; and is not a civil action by a governmental unit to enforce such governmental unit's police or regulatory power.

20.     As the title to 28 U.S.C. § 1452 itself indicates, ("Removal of Claims related to "bankruptcy cases"), matters that can be removed include claims "related to" a bankruptcy case within the meaning of 28 U.S.C. § 1334(b).

21.     In addition, pursuant to 28 U.S.C. §1452(a), any civil action brought in a state court may also be subject to removal pursuant to 28 U.S.C. §1441(a), if applicable. FLH, as Defendant, is exercising its right to remove the State Court Action. See <u>Things Remembered, Inc. v. Petrarca</u>, 516 U.S. 124 (1995). 28 U.S.C. §1441(a) provides as follows:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

With respect to removal pursuant to 28 U.S.C. §1441(a), 28 U.S.C. §1446 sets forth procedures very similar to those contained in Bankruptcy Rule 9027.

28 U.S.C. §1446(a) provides as follows:

> (a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

22.    As stated in <u>California Public Employees' Retirement System v. Worldcom, Inc.</u>, 368 F.3d 86 (2d. Cir. 2004), "When Congress enacted Section 1452(a) in 1984,... 'Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with *all* matters connected with the bankruptcy estate' ... Accordingly, in its every detail, Section 1452(a) is designed to further Congress's purpose of centralizing bankruptcy litigation in a federal forum." <u>California Public Employees' Retirement System</u>, 268 F.3d at 103 (emphasis is original, quoting <u>Celotex v. Edwards</u>, 514 U.S. 300, 308 n. 5 (1995)). That premise is applicable in the instant case where the subject matter concerns Debtors' jewelry business, which remain among the most significant assets in the Debtors' Bankruptcy Cases.

23.    Bankruptcy courts may also adjudicate state law claims pursuant to "arising in" jurisdiction when those claims are at the "heart" of the administration of the bankruptcy estate, as is the case here. <u>See</u>, <u>e.g.</u>, <u>Central Vermont Public Serv. Corp.</u>, 341 F.3d 186, 191 (2d Cir. 2003) (citing <u>In re Ben Cooper</u>, 896 F.2d 1394, 1399 (2d Cir. 1991)). The claims asserted by the Plaintiffs and Defendants in the State Court Action will have the potential to materially affect any proposed distribution. Further, the removal of this State Court Action will assist in

administering the Debtors' estates by potentially avoiding concurrent proceedings addressing the same subject matter, as shown below.

24.    Here, although Plaintiffs' claims are nominally state law claims, the nature of the proceedings and the relief requested nevertheless provide this Court with "arising in," "arising under," and "related to" jurisdiction over this action, pursuant to 28 U.S.C. § 1334(b).  This action "arises in" a case under Title 11 because it concerns, *inter alia*, the administration of the Debtors' estates -which constitute "core proceedings" under 28 U.S.C. § 157(b).  Second, this State Court Action is "related to" a case under Title 11 because it will have a conceivable impact on the handling and administration of the bankrupt estates in light of the significant damages requested by Plaintiffs.

25.    Further, the Plaintiffs may intend to file a proof of claim in the Bankruptcy Cases to assert the claims in the State Court Action.  It is possible the Debtors would object to any proof(s) of claim which the Plaintiffs may file.  If so, it will be necessary to resolve the claim objection.  Such attendant process is a core proceeding.  See 28 U.S.C. §157(a)(2)(B).  If removal does not occur, resolution of that objection could result in duplication of litigation of issues being determined in the State Court Action.  That risk for duplication would justify consolidation of the claim objection proceeding with the claims set forth in the State Court Action.  Such consolidation would render the State Court Action a core proceeding and thus within the jurisdiction of this Court (and upon referral, the Bankruptcy Court).

26.    To the extent that the Bankruptcy Court does not possess core jurisdiction over Plaintiffs' claims, it possesses "related-to" jurisdiction over them.  A proceeding meets the jurisdictional threshold of 28 U.S.C. § 1334(b) if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.  See, e.g., In re

Cayahoga Equipment Corp., 980 F.2d 110, 114 (2d Cir. 1992) (stating the bankruptcy court has "related to" jurisdiction over any action that might have a "conceivable effect" on the bankrupt estate). Here, at a minimum, the resolution of Plaintiffs' claims will directly affect whether there are additional monies available for distribution to the Debtors' creditors. Most of the claims set forth in the Complaint are related to the Bankruptcy Cases.

27.    Plaintiffs' claims are "related to" the Bankruptcy Cases as they will have a "conceivable effect" on the Debtors' estates. Although 28 U.S.C. § 1334(b) does not provide a definition for "related to" actions,[3] the Second Circuit applies the following test to determine if a third party action is related to a bankruptcy proceeding:

> The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any *"conceivable effect"* on the bankruptcy estate. If that question is answered affirmatively, the litigation falls within the "related to" jurisdiction of the bankruptcy court. (Emphasis supplied.)

Publicker Industries Inc. v. United States (*In re* Cuyahoga), 980 F.2d 110, 114 (2d Cir. 1992). See also Kerusa, Co. LLC v.W10Z/515 Real Estate Ltd. Partnership, No. 04 Civ. 708 (GEL), 2004 WL1048239 at *3 (S.D.N.Y. May 7, 2004) (claims against non-debtor were clearly "related to" bankruptcy case because they likely give rise to contribution or indemnity claims).

28.    In light of the foregoing, the Bankruptcy Court can and should adjudicate any claims arising from the proceedings held before it -- as the Bankruptcy Cases will be directly impacted from the claims asserted in the Complaint and the Answer.

29.    No previous application has been made for this or any similar relief. In accordance with 28 U.S.C. § 1452 and Bankruptcy Rule 9027(c), after the filing of this Notice of

---

[3] Nemsa Establishment, S.A. v. Viral Testing Systems Corp., No. 95 Civ. 0277 (LAP), 1995 U.S. Dist. LEXIS 11650, at *5, 6 (S.D.N.Y. Aug. 14, 1995).

Removal, FLH shall promptly give written Notice of the Filing of the Notice of Removal to the Plaintiffs (a copy of which proposed notice is annexed hereto as <u>Exhibit "B"</u>), and shall file a copy of the Filing of the Notice of Notice of Removal with the County Clerk of the Supreme Court of the State of New York, County of New York.

     **WHEREFORE**, Defendant FLH respectfully requests that the matter of <u>Fred Leighton, Ltd., et al., v. Fred Leighton Holding, Inc. (f/k/a Samba I, Inc.) and Ralph Esmerian</u>, Index No. 602533/07, presently pending in the Supreme Court of the State of New York, be removed to this Court, that this Court accept jurisdiction of said action and, upon acceptance of jurisdiction, that this matter thereupon be referred to the Honorable Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York.

Dated: May 12, 2008

Respectfully submitted,

HERRICK, FEINSTEIN LLP
Attorneys for Defendant Fred Leighton Holding, Inc.

By: _____
Joshua J. Angel, Esq.
Paul Rubin, Esq.
2 Park Avenue
New York, New York 10016
(212) 592-1400
jangel@herrick.com
prubin@herrick.com

EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK  x
COUNTY OF NEW YORK

FRED LEIGHTON, LTD., FRED LEIGHTON, LLC,
FRED LEIGHTON AND GLORYA LEIGHTON AS
TRUSTEES OF THE FRED LEIGHTON
REVOCABLE TRUST, FRED LEIGHTON AS
TRUSTEE OF THE FRED LEIGHTON ANNUITY
TRUST, FRED LEIGHTON AND MARA LEIGHTON;

               Plaintiffs,

          -against-

FRED LEIGHTON HOLDING INC. (f/k/a SAMBA 1,
INC.) and RALPH ESMERIAN,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

: Index No. 602533/07
Date purchased: July 26, 2007

: 

: 

: 

: 

:   **SUMMONS**

: Plaintiffs designate New York County
  as the venue of this action. The basis of
: the choice of venue is based on
  Plaintiffs' residences.

Plaintiffs Fred and Mara Leighton
reside at 45 East 66th Street, New
York, New York 10021

TO THE ABOVE NAMED DEFENDANTS:

    YOU ARE HEREBY SUMMONED to answer the Complaint of the plaintiffs in this
action, and serve a copy of your answer, or, if the complaint is not served with this summons, to
serve a notice of appearance, upon the undersigned attorneys for the plaintiffs within twenty (20)
days after service of the above, exclusive of the date of service or within thirty (30) days after
service is complete if service is made by any method other than personal delivery to you within
the State of New York.

    In the case of your failure to answer the Complaint of the plaintiffs, judgment will be
taken against you on default for the relief sought in the complaint.

Dated: July 26, 2007
     New York, New York

              GOODWIN PROCTER LLP

              By:_____
                 Jeffrey A. Simes
                 Katherine S. Bromberg

            599 Lexington Avenue
            New York, New York 10022
            (212) 813-8800

            Attorneys for Plaintiffs

NEW YORK
COUNTY CLERK'S OFFICE

JUL 2 6 2007

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK  x
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - :

FRED LEIGHTON, LTD., FRED LEIGHTON, LLC.,
FRED LEIGHTON AND GLORYA LEIGHTON AS      :
TRUSTEES OF THE FRED LEIGHTON
REVOCABLE TRUST, FRED LEIGHTON AS         :
TRUSTEE OF THE FRED LEIGHTON ANNUITY
TRUST, FRED LEIGHTON AND MARA LEIGHTON; : 

              Plaintiffs,         :

         -against-              :

FRED LEIGHTON HOLDING INC. (f/k/a SAMBA 1, :
INC.) and RALPH ESMERIAN,
                         :

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. _602533/07_

**Jury Trial Demanded**

## COMPLAINT

      Plaintiffs, Fred Leighton, Ltd., Fred Leighton, LLC, Fred Leighton and Glorya Leighton

as Trustees of the Fred Leighton Revocable Trust, Fred Leighton as Trustee of the Fred Leighton

Annuity Trust, Fred Leighton and Mara Leighton (collectively "Plaintiffs" or the "Leightons"),

by their attorneys Goodwin Procter LLP, for their Complaint against the defendants Fred

Leighton Holding Inc. f/k/a Samba 1, Inc. ("Samba") and Ralph Esmerian ("Esmerian")

(collectively "Defendants") allege as follows:

## INTRODUCTION

    1.    This action centers around the sale of a successful antique jewelry business.  The

sellers—the Leightons—bring this action against the buyers—the Defendants—because the

Defendants have failed to honor their contractual commitments under the written agreements that

memorialize the sale of the Leightons' business.

2.      The transaction involved three pertinent agreements, all executed on or about March 28, 2006. The sale of the business was primarily accomplished by means of an Asset Purchase Agreement among the parties (the "Asset Purchase Agreement"). In addition, as part of that same transaction, Samba 1, Inc. (the successor in interest to Defendant Fred Leighton Holding Inc.) entered into Employment Agreements with both Fred Leighton and Mara Leighton under which Fred and Mara Leighton would be retained as employees for a period of one year following the close of the acquisition and that thereafter they would remain as consultants to this business. Esmerian guaranteed all of the contractual obligations of Samba 1.

3.      Defendants have breached their unambiguous contractual commitments by failing to make the payments to the Leightons that the Asset Purchase Agreement and the Employment Agreements require. The Defendants have failed to pay the Leightons for, *inter alia*, certain receivables and other items that the Asset Purchase Agreement clearly obligated Defendants to pay, and the Defendants have failed to make the periodic post-employment payments to Fred and Mara Leighton required under the Employment Agreements. The Leightons therefore bring this breach of contract action against Defendants through which the Leightons seek to recover for breaches of the Asset Purchase Agreement and the Employment Agreements by Defendants.

4.      This case also involves a request for declaratory judgment. In an attempt to reduce or avoid their liability to the Leightons, Defendants have attempted to assert  entirely falsely—that the Leightons owe additional funds to Defendants under the Asset Purchase Agreement. This pretextual assertion is a baseless attempt to create a controversy simply to garner the Defendants additional negotiating leverage against the Leightons' rightful claims. The Leightons request that the Court reject this ruse, and award declaratory judgment that

Defendants are owed nothing further under the Asset Purchase Agreement and that the Leightons have complied with their contractual obligations.

<u>**PARTIES**</u>

5.     Plaintiff Fred Leighton, Ltd. is a New York corporation that, at all relevant times, regularly transacted business in the State of New York and had its principal place of business at 773 Madison Avenue, New York, New York 10021.

6.     Plaintiff Fred Leighton, LLC is a Nevada limited liability company which, at all relevant times, had its principal place of business at the Bellagio Hotel, 3600 Las Vegas Boulevard, Las Vegas, Nevada 89109.

7.     Plaintiffs Fred Leighton and Glorya Leighton, as Trustees of the Fred Leighton Revocable Trust, under instrument dated November 17, 1999, are citizens of the State of New York, each residing at 45 East 66th Street, New York, New York 10021.

8.     Plaintiff Fred Leighton, as Trustee of the Fred Leighton Annuity Trust, under instrument dated March, 9, 2004, is a citizen of the State of New York, residing at 45 East 66th Street, New York, New York 10021.

9.     Plaintiffs Fred and Mara Leighton are citizens of the State of New York, each residing at 45 East 66th Street, New York, New York 10021.

10.     Upon information and belief, Defendant Fred Leighton Holding Inc. f/k/a Samba I Inc., is a Delaware Corporation with its principal place of business at 773 Madison Avenue, New York, New York 10021.

11.     Upon information and belief, Defendant Ralph Esmerian is a citizen of the State of New York residing at 1001 Park Avenue, New York, New York 10028 and is also the majority stockholder of Fred Leighton Holding Inc. f/k/a Samba I Inc.

12.     Defendant Ralph Esmerian guaranteed the obligations of Samba I.  On information and belief, Samba I and Fred Leighton Holding Inc. have been controlled by Esmerian as to all matters relevant hereto.

## JURISDICTION AND VENUE

13.     At all times relevant to this action, each of the defendants has transacted and continues to transact business in the State of New York.

14.     Venue for this action is proper in New York County pursuant to CPLR § 503(a), (c) in that, at all times relevant hereto, plaintiffs Fred Leighton, Ltd., Fred and Mara Leighton and defendant Ralph Esmerian resided and continue to reside in New York County.

15.     Venue for this action is proper in New York County pursuant to CPLR § 509.

## FACTUAL ALLEGATIONS

16.     The Fred Leighton Rare Collectible Jewels business, located at 773 Madison Avenue, New York, New York, 10021, and at the Bellagio in Las Vegas, Nevada, offers for sale some of the finest jewelry in the world.  The Fred Leighton line of jewelry is world renowned, and is worn by the most discerning international clientele, including celebrities and royalty who select these rare, expensive and artistic jewels to wear to society events.

17.     The Fred Leighton jewelry business was run as a family business from its founding in or about 1965 through March of 2006, when the business was sold to Defendants.

Fred and Mara Leighton have been the principal drivers behind the world famous Fred Leighton brand and the tremendous growth and success of the company.

18.    The success of the Leightons owed not only to their selection of the finest jewelry and gems, but also to the artistic manner in which they were set. The Leightons created a unique image for their products, selling both antique and Victorian-style jewelry which proved to be wildly popular. Fred and Mara Leighton, who were the creative engines behind this style, were thus essential to the success of the business.

19.    Upon information and belief, Defendant Ralph Esmerian has been in the business of dealing and collecting gems and artwork for a number of years. His business brought him into contact with the Leightons on several occasions. Mr. Esmerian eventually expressed an interest in purchasing the Leightons' business. Mr. Esmerian's long history of aesthetic collection and sense of design made the Leightons comfortable that he possessed the sophistication and talent to carry on the business.

20.    On March 28, 2006, Defendants acquired the Fred Leighton jewelry business through the Asset Purchase Agreement.

21.    Defendant Esmerian entered into the Asset Purchase Agreement as the Guarantor, and agreed to cause Samba 1 "to perform its pre-closing obligations under this Agreement and [to] cause Buyer (and/or any permitted transferee or assignee) to consummate the transactions contemplated hereby, including, without limitation, payment of the Purchase Price." See Asset Purchase Agreement § 19.14.

22.    Because Fred and Mara Leighton were an essential part of the business and the cornerstone behind the success of the business and the Fred Leighton brand, the parties agreed

that Fred and Mara Leighton should remain on as employees of the business for one year following the sale, and would remain as paid consultants to the business for a period thereafter. Accordingly, on March 28, 2006, Defendants entered into separate Employment Agreements with Fred Leighton and Mara Leighton.

23.     The execution and delivery of the Employment Agreements between Samba and Fred and Mara Leighton were included in the Asset Purchase Agreement as a condition precedent to the closing of the sale of the Fred Leighton jewelry business. See Asset Purchase Agreement § 9.8.

24.     The Asset Purchase Agreement and the two Employment Agreements provide that New York law will govern. See Asset Purchase Agreement § 19.7; Employment Agreements § 9.e.

25.     On information and belief, subsequent to the execution of the Asset Purchase Agreement, Samba 1 changed its name to Fred Leighton Holding Inc. Fred Leighton Holding Inc. is thus successor as to all liabilities and obligations of Samba 1 under the Asset Purchase Agreement and the Employment Agreements.

*Defendants' Breach of the Employment Agreements*

26.     The parties entered into these Employment Agreements simultaneously with the execution of the Asset Purchase Agreement in recognition that both Fred and Mara Leighton, "due to his[her] prior employment with the seller of the business now conducted by the Employer ("Seller"), possess[] an intimate knowledge of the business and affairs of Employer, its policies, methods, personnel, opportunities and problems . . . Employer desires to assure itself of Executive's continued employment by Employer and to compensate Executive for such efforts." Employment Agreement, Recital Clauses 1 and 2.

-6-

27.    The Employment Agreements were drafted to run for the term of one year, with an option on the part of the company to renew Fred Leighton's Employment Agreement for an additional year. The employment relationships of both Fred and Mara Leighton to the company terminated as of March 27, 2007. Thereafter, both Fred and Mara Leighton became paid Consultants to the Company and are entitled to receive consideration provided for in their respective agreements as set forth in Section 6.c. See Employment Agreements § 6.c.

28.    Section 6.c. of the Employment Agreements provides, in relevant part:

> Upon termination of employment . . . Employer agrees to retain Executive as a Consultant to render consulting advice on a reasonable basis as Company may request for a five (5) year term for $175,000 per year (subject to reduction as hereafter provided) payable ratably on a monthly basis in arrears.

Employment Agreements § 6.c.

29.    In an April 23, 2007 letter from Fred and Mara Leighton to Esmerian ("April 23 Letter"), the Leightons reminded Defendant Esmerian that they were entitled to receive an aggregate amount of $14,583.33 per month and that the Leightons had established a New York limited liability company called Moonbeam Consulting LLC to which they requested that Esmerian make the payments required under the Employment Agreements.

30.    The Leightons noted in the April 23 Letter that the first of such payments was due on April 27, 2007, in accordance with the terms of the Employment Agreements.

31.    On May 10, 2007, Esmerian sent a letter to the Leightons requesting express written acknowledgment that Moonbeam Consulting LLC agreed to be bound by the obligations of the Leightons.

32.     The Leightons complied with Esmerian's request in their May 22, 2007 Letter ("May 22 Letter") by acknowledging explicitly that "for so long as Moonbeam is owned and controlled by either or both of us, we will cause Moonbeam to remain in compliance with the Employment Agreements, as and to the extent required therein."

33.     Notwithstanding the Leightons' compliance with Esmerian's request, Defendants have still failed to pay monies owed to Fred and Mara Leighton under the Employment Agreements.

***Defendants' Breach of the Asset Purchase Agreement***

34.     The Defendants have also failed to honor their obligations under the Asset Purchase Agreement. The Leightons, through their counsel, wrote to Defendants on April 25, 2007 about, among other things, Defendants' breaches of the Asset Purchase Agreement ("April 25 Letter").

35.     That letter informed Defendants, among other things, that they were in violation of Section 3.5.1 of the Asset Purchase Agreement because they had failed to compensate the Leightons for "Overaged Accounts Receivable" as required by the Asset Purchase Agreement.

36.     Section 3.5.1 of the Asset Purchase Agreement provides that the Leightons retain all accounts receivable which were outstanding for more than ninety days as of the date of closing. It further provided that to the extent Defendants were to receive any payment on any such "Overaged Accounts Receivable" following the closing, any such payments were to be remitted to the Leightons. In other words, the old receivables were the Leightons' problem, and if any payments were received on them, they belonged to the Leightons.

37.     In the April 25 Letter, the Leightons informed Defendants that they owed the Leightons monies based on amounts collected by Defendants that fall within the term "Overaged A/R", as defined in Section 3.5.1 of the Asset Purchase Agreement.  In particular, the Leightons noted that they were owed for:

> (1) A $171,497.50 check paid by Constance Darrow on November 20, 2006; and

> (2) Three separate credit card transactions by Maya Polsky in which she paid $20,000.00 on October 13, 2006, $43,000.00 on November 14, 2006 and $20,000.00 on November 14, 2006.

38.     The Leightons further informed Defendants that they owed an additional item of unaccounted inventory for which they were liable as the Buyer to Seller (as those terms are defined in the Asset Purchase Agreement), namely a $2,500.00 diamond flower clasp returned by Jadeite Collection of Hong Kong on August 16, 2006.

39.     This was not the first time that the Leightons had requested the proceeds from these items from Defendants.  The Leightons had made repeated requests to Defendants, and in particular to Mr. Esmerian, for payment in the past.  To date, Defendants have still not paid these amounts that they owe under the Asset Purchase Agreement and they may owe additional amounts as well for Overaged Accounts Receivable.

40.     · Defendants also owed $100,000 to the Leightons on March 27, 2007 as part of the purchase price under the plain provisions of Section 3.1 of the Asset Purchase Agreement. Section 3.1 states:

> 3.1 <u>Purchase Price</u>.  The aggregate purchase price for the Assets shall be One Hundred Million ($100,000,000.00) US Dollars payable at the Closing (the "Closing Purchase Price"), plus Five Hundred Thousand ($500,000) US Dollars payable over a five year period following the Closing in equal increments of $100,000 paid annually on each anniversary date of the Closing (the "Deferred

Purchase Price," and collectively with the Closing Purchase Price,
the "Purchase Price"), subject to adjustment as provided below and
the assumption by the Buyer of the Assumed Liabilities.

Asset Purchase Agreement § 3.1.

41.    In the May 22 Letter from Fred and Mara Leighton to Esmerian, the Leightons
reminded Defendants of their unfulfilled obligation to pay the Deferred Purchase Price.

42.    The Leightons also again requested payment for the value of an additional item of
unaccounted inventory that was found in the New York store post-closing (a $16,950 emerald
cameo and diamond chain) and which was acknowledged by Defendants in a March 27 Letter
("March 27 Letter").  Despite this acknowledgement, Defendants continue to breach the Asset
Purchase Agreement by failing to pay the Leightons this amount.

43.    The Leightons have reminded Defendants that they owe the Leightons a sum of
$373,947.50 under the Asset Purchase Agreement and requested payment of such sum within ten
(10) days of the May 22 Letter.

44.    Defendants have not fulfilled their material obligations nor responded to the
Leightons' repeated requests for Defendants' performance of their obligations under the Asset
Purchase Agreement.

*Defendants' Meritless Claims that Plaintiffs Breached the Asset Purchase Agreement*

45.    Rather than pay the Leightons what Defendants know they owe, Defendants
instead, on information and belief, hatched a scheme to avoid their liability to the Leightons in
which Defendants sought to trump up breaches of the Asset Purchase Agreement against which
the Defendants would seek to negotiate their obligations to the Leightons.  On information and
belief, Defendants sought to assert spurious claims under the Asset Purchase Agreement in an

attempt to offset or negate what they knew they would owe under the Asset Purchase Agreement and Employment Agreements.

46.     On March 27, 2007, Defendants wrote to the Leightons asserting a purported claim for indemnification under Section 14.3 of the Asset Purchase Agreement. Section 14.1 of the Asset Purchase Agreement provided that the Leightons were to provide specific indemnity rights to Samba 1, predecessor to Defendant Fred Leighton Holding Inc.

47.     The Asset Purchase Agreement provided for significant limitations on those indemnity rights. First, the Asset Purchase Agreement (in Section 13.1) specifically provided that, with limited exceptions, its representations, warranties and covenants would survive only for twelve months following the closing, after which time no indemnity was available to Defendants. Moreover, Section 14.3.1(a) of the Asset Purchase Agreement provided that any claim for indemnity had to be supported by "reasonable detail" and specify the amounts sought.

48.     The March 27, 2007 letter from Defendants—sent on the very last day of the indemnity period—provided very little detail concerning what "breaches" of representations and warranties were being asserted and frequently cited to various paragraphs and schedules of the Asset Purchase Agreement that do not exist. The little detail that was provided made clear that all such purported breaches of representations and warranties were false and were merely pretextual.

49.     Certain items were demonstrably false and utterly bizarre, such as the assertion that rent had not been paid for the Las Vegas store in August 2005. In fact, as Defendants were well aware, the landlord of that store had previously provided the Defendants with an "estoppel certificate" unequivocally asserting that all rent had been paid through March 2006.

50.     Plaintiffs responded to the March 27 Letter with the April 25 Letter, noting that the March 27 Letter failed to assert valid claims or to provide the "reasonable detail" of claims required by Section 14.3.1(a) of the Asset Purchase Agreement.

51.     Section 14.3(1)(a) states:

> (a) In the event that any Person entitled to indemnification under this Agreement (an "Indemnified Party") asserts a claim for indemnification which does not involve a Third Party Claim (as defined in Section 14.3.2) (the "Non-Third Party Claim"), against which a Person is required to provide indemnification under this Agreement (an "Indemnifying Party"), the Indemnified Party shall give written notice to the Indemnifying Party (the "Non-Third Party Claim Notice"), which Non-Third Party Claim Notice shall (i) describe the claim in reasonable detail, and (ii) indicate the amount (estimated, if necessary, and to the extent feasible) of the Losses that have been or may be suffered by the Indemnified Party.

52.     More importantly, in the April 25 Letter Plaintiffs informed Defendants that they are precluded by bringing these claims for losses under Section 14.4.4(b)(i) of the Asset Purchase Agreement because Defendants knew of any such claims at the time of closing.

53.     Section 14.4.4(b) provides:

> (b) neither the Sellers nor the Principal Owners shall be liable to, or indemnify, the Buyer Indemnified Parties for any Losses (i) resulting from any nonfulfillment or breach of any covenant, agreement, representation or warranty of which the Buyer Indemnified Parties had knowledge on or prior to the Closing Date, or (ii) that are punitive, special, exemplary or otherwise not actual damages, in the nature of lost profits, or any diminution in value of property or equity and, further, the Buyer Indemnified Parties acknowledge and agree that they shall not be entitled to use, and they shall not use, a "multiple of profits" or "multiple of cash flow" or any other similar valuation methodology in calculating the amount of any Losses.

Asset Purchase Agreement § 14.4.4(b).

54.     Notwithstanding that, Defendants sought indemnification outside the terms of the Asset Purchase Agreement, Plaintiffs' April 25 Letter addressed each of Defendants' items raised in their March 27 Letter.  Plaintiffs noted that for many of Defendants' claims the provisions of the Asset Purchase Agreement under which Defendants were asserting obligations by the Plaintiffs did not exist.

55.     Defendants' assertions of monies owed to Plaintiffs are clearly incorrect in accordance with the plain terms of the Asset Purchase Agreement.  Defendants continue to assert their claims as set forth under the March 27 Letter and have made threats of litigation against the Leightons in connection with such claims.

## COUNT I

### *(Breach of Contract)*

56.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs with the same force and effect as if hereinafter fully set forth at length.

57.     The conduct of the Defendants described herein was in breach of the Asset Purchase Agreement and the Employment Agreements in favor of the Plaintiffs with respect to the sums set forth by the Leightons to Defendants in the April 23 Letter, the April 25 Letter and the May 22 Letter.

58.     The agreements discussed herein are valid contracts supported by adequate consideration.

59.     The Defendants' failure to perform under the agreements was without justification.

-13-

60.    As a direct and proximate result of the breaches by the Defendants of the agreements, the Plaintiffs have suffered damages.

61.    The Leightons are thus entitled to recover compensatory damages in an amount to be determined at the trial of this action.

## COUNT II

### *(Declaratory Judgment)*

62.    Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs with the same force and effect as if hereinafter full set forth at length.

63.    The Leightons performed under the agreements, and the Defendants failed to perform.

64.    Defendants' letters suggesting that the Leightons failed to perform under the Asset Purchase Agreement are meritless.

65.    An actual controversy exists with respect to the rights, duties and obligations of the parties under the Asset Purchase Agreement with respect toward Defendants' nonperformance as alleged herein.

66.    The Leightons have already incurred significant harm, losses and damage from the Defendants' improper and unlawful conduct.

67.    Declaratory relief declaring the rights, duties and other legal relations of the parties is necessary to protect the Plaintiffs' rights.

68.    The Leightons are entitled to a binding and judicial declaration that:

1.    The Leightons have performed their obligations under the Asset Purchase Agreement and Defendants have not;

2.    The assertions made by Defendants with respect to their demand for payment from the Leightons are without merit.

## JURY DEMAND

69.    Plaintiffs demand a trial by jury on all issues so triable.

WHEREFORE, Fred Leighton, Ltd., Fred Leighton, LLC, Fred Leighton and Glorya Leighton as Trustees of the Fred Leighton Revocable Trust, Fred Leighton as Trustee of the Fred Leighton Annuity Trust, Fred Leighton and Mara Leighton, by their attorneys Goodwin Procter LLP, for their Complaint against the Defendants Fred Leighton Holding Inc. f/k/a Samba 1, Inc. and Ralph Esmerian, respectfully ask that the Court grant the following relief:

1.    Enter judgment in favor of Plaintiffs on all counts of this Complaint;

2.    Order that the defendants Samba 1, Inc. and Ralph Esmerian pay all monies owed to Plaintiffs under the Asset Purchase Agreement and the Employment Agreements as owed and withheld by Defendants as a result of their improper and unlawful conduct with interest;

3.    Enter a declaratory judgment in accordance with the requests set forth in Count II of this Complaint;

-15-

4.   Award Plaintiffs prejudgment interest;

5.   Award Plaintiffs their costs, expenses and attorneys' fees; and

6.   Enter such further and additional relief as the Count deems to be appropriate.

Respectfully submitted,

FRED LEIGHTON, LTD., FRED LEIGHTON, LLC., FRED LEIGHTON AND GLORYA LEIGHTON AS TRUSTEES OF THE FRED LEIGHTON REVOCABLE TRUST, FRED LEIGHTON AS TRUSTEE OF THE FRED LEIGHTON ANNUITY TRUST, FRED LEIGHTON AND MARA LEIGHTON

By their attorneys,

Jeffrey A. Simes, Esq.
Katherine S. Bromberg, Esq.
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
(212) 813-8800

Dated: July 26, 2007
      New York, New York

-16-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

FRED LEIGHTON, LTD., FRED LEIGHTON, LLC,
FRED LEIGHTON AND GLORYA LEIGHTON AS
TRUSTEES OF THE FRED LEIGHTON REVOCABLE
TRUST, FRED LEIGHTON AS TRUSTEE OF THE          Index No. 602533/07
FRED LEIGHTON ANNUITY TRUST, FRED
LEIGHTON AND MARA LEIGHTON,

                                        Plaintiffs,

        - against -

FRED LEIGHTON HOLDING INC. (f/k/a SAMBA 1,
INC.) AND RALPH ESMERIAN,

                                        Defendants.

------------------------------------------------------------------x

## ANSWER AND COUNTERCLAIMS

Defendants, Fred Leighton Holding Inc. (f/k/a Samba 1, Inc.) ("Samba") and Ralph

Esmerian ("Esmerian", collectively, the "Defendants"), by and through their attorneys, Katsky

Korins LLP, as and for their answer to the complaint of Fred Leighton, Ltd., Fred Leighton,

LLC, Fred Leighton and Glorya Leighton as Trustees of The Fred Leighton Revocable Trust,

Fred Leighton as Trustee of The Fred Leighton Annuity Trust, Fred Leighton and Mara Leighton

(the "Plaintiffs") dated July 26, 2007 (the "Complaint"), state as follows:

        1.    Admit that this action involves the sale of a jewelry business, affirmatively states

that Plaintiffs breached their contractual agreements with Defendants in connection with such

sale and related agreements, and otherwise deny the allegations contained in paragraph "1" of the

Complaint.

        2.    Admit that the sale of the jewelry business involved a number of transactional

documents including, without limitation, an Asset Purchase Agreement and employment

309509-4-W

agreements, and otherwise deny the remaining allegations of the paragraph "2" of the Complaint since the description of the terms of such agreements contained therein is incomplete and such documents otherwise speak for themselves.

3.      Deny the allegations contained in paragraph "3" of the Complaint, and affirmatively state that Plaintiffs breached their obligations under the Asset Purchase Agreement, Employment Agreements and Non-Compete Agreements and are required to indemnify and/or pay damages to Defendants in accordance with their terms.

4.      Deny the allegations contained in paragraph "4" of the Complaint.

5.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the Complaint.

6.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "6" of the Complaint.

7.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "7" of the Complaint.

8.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "8" of the Complaint.

9.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "9" of the Complaint.

10.     Admit the allegations contained in paragraph "10" of the Complaint.

11.     Admit the allegations contained in paragraph "11" of the Complaint.

12.     The allegations in paragraph "12" refer to an incomplete description of a written document which speaks for itself.  Paragraph "12" is accordingly denied.

## JURISDICTION AND VENUE

13.    Admit the allegations contained in paragraph "13" of the Complaint.

14.    Admit that Esmerian resided and continues to reside in New York County, but deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Complaint.

15.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" of the Complaint.

## FACTUAL ALLEGATIONS

16.    Admit that Samba is in the business of selling fine jewelry in New York and Nevada, and otherwise deny the allegations contained in paragraph "16" of the Complaint.

17.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "17" of the Complaint.

18.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "18" of the Complaint.

19.    Admit that Esmerian has been in the jewelry business for a number of years, and otherwise deny the allegations contained in paragraph "19" of the Complaint.

20.    Deny the allegations contained in paragraph "20" of the Complaint, and affirmatively states that jewelry business was sold pursuant to an Asset Purchase Agreement dated March 28, 2006 to Samba.

21.    The allegations in paragraph "21" is an incomplete description of a written document which speaks for itself. Paragraph "21" is accordingly denied.

22.    The allegations in paragraph "22" is an incomplete description of a written document which speaks for itself. Paragraph "22" is accordingly denied.

23.    The allegations in paragraph "23" is an incomplete description of a written document which speaks for itself. Paragraph "23" is accordingly denied.

24.    The allegations in paragraph "24" is an incomplete description of a written document which speaks for itself. Paragraph "24" is accordingly denied.

25.    Admit that Samba changed its name to Fred Leighton Holding Inc., and otherwise deny the allegations contained in paragraph "25" of the Complaint.

26.    The allegations in paragraph "26" is an incomplete description of a written document which speaks for itself. Paragraph "26" is accordingly denied.

27.    The allegations in paragraph "27" is an incomplete description of a written document which speaks for itself. Paragraph "27" is accordingly denied.

28.    The allegations in paragraph "28" is an incomplete description of a written document which speaks for itself. Paragraph "28" is accordingly denied.

29.    The allegations in paragraph "29" is an incomplete description of a written document which speaks for itself. Paragraph "29" is accordingly denied.

30.    The allegations in paragraph "30" is an incomplete description of a written document which speaks for itself. Paragraph "30" is accordingly denied.

31.    The allegations in paragraph "31" is an incomplete description of a written document which speaks for itself. Paragraph "31" is accordingly denied.

32.    The allegations in paragraph "32" is an incomplete description of a written document which speaks for itself. Paragraph "32" is accordingly denied.

33.    Admit that Plaintiffs provided Defendants with a May 22 Letter which document speaks for itself and affirmatively state with respect to paragraph "33" of the Complaint that Plaintiffs breached their obligations under the Asset Purchase Agreement, Employment

Agreements, and Non-Compete Agreements and are required to indemnify and/or pay damages to Defendants in accordance with their terms, and therefore the balance of such paragraph is denied.

34.    Deny the allegations contained in paragraph "34" of the Complaint and affirmatively state that Plaintiffs breached their obligations under the Asset Purchase Agreement, Employment Agreements, and Non-Compete Agreements and are required to indemnify and/or pay damages to Defendants in accordance with their terms.

35.    The allegations in paragraph "35" is an incomplete description of a written document which speaks for itself. Paragraph "35" is accordingly denied.

36.    The allegations in paragraph "36" is an incomplete description of a written document which speaks for itself. Paragraph "36" is accordingly denied.

37.    The allegations in paragraph "37" is an incomplete description of a written document which speaks for itself. Paragraph "37" is accordingly denied.

38.    The allegations in paragraph "38" is an incomplete description of a written document which speaks for itself. Paragraph "38" is accordingly denied.

39.    Deny the allegations contained in paragraph "39" of the Complaint and affirmatively state that Plaintiffs breached their obligations under the Asset Purchase Agreement, Employment Agreements, and Non-Compete Agreements and are required to indemnify and/or pay damages to Defendants in accordance with their terms.

40.    The allegations in paragraph "40" is an incomplete description of a written document which speaks for itself. Paragraph "40" is accordingly denied.

41.    The allegations in paragraph "41" is an incomplete description of a written document which speaks for itself. Paragraph "41" is accordingly denied.

42.     The allegations in paragraph "42 is an incomplete description of a written document which speaks for itself.  Paragraph "42" is accordingly denied.

43.     The allegations in paragraph "43" is an incomplete description of a written document which speaks for itself.  Paragraph "43" is accordingly denied.

44.     Deny the allegations contained in paragraph "44" of the Complaint and affirmatively state that Plaintiffs breached their obligations under the Asset Purchase Agreement, Employment Agreements, and Non-Compete Agreements and are required to indemnify and/or pay damages to Defendants in accordance with their terms.

45.     Deny the allegations contained in paragraph "45" of the Complaint.

46.     Admit the allegations contained in paragraph 46 of the Complaint and affirmatively dispute the characterization of Defendants' claims as "purported."

47.     The allegations in paragraph "47" is an incomplete description of a written document which speaks for itself, and affirmatively state that Plaintiffs breached their obligations under the Asset Purchase Agreement, Employment Agreements, and Non-Compete Agreements and are required to indemnify and/or pay damages to Defendants in accordance with their terms.

48.     Deny the allegations contained in paragraph "48" of the Complaint, and affirmatively state that Defendants' indemnification letter was timely and contained reasonable detail to put Plaintiffs on notice of their breaches under the Asset Purchase Agreement.

49.     Deny the allegations contained in paragraph "49" of the Complaint.

50.     The allegations in paragraph "50" is an incomplete description of a written document which speaks for itself.  Paragraph "50" is accordingly denied.

51.    The allegations in paragraph "51" is an incomplete description of a written document which speaks for itself. Paragraph "51" is accordingly denied.

52.    The allegations in paragraph "52" is an incomplete description of a written document which speaks for itself. Paragraph "52" is accordingly denied.

53.    The allegations in paragraph "53" is an incomplete description of a written document which speaks for itself. Paragraph "53" is accordingly denied.

54.    The allegations in paragraph "54" is an incomplete description of a written document which speaks for itself. Paragraph "54" is accordingly denied.

55.    Deny the allegations contained in paragraph "55" of the Complaint and affirmatively state that Plaintiffs breached their obligations under the Asset Purchase Agreement, Employment Agreements, and Non-Compete Agreements and are required to indemnify and/or pay damages to Defendants in accordance with their terms.

## COUNT I

56.    Defendants repeat and reallege the responses contained in paragraphs 1 through 55 of this answer with the same force and effect as if hereinafter fully set forth herein

57.    Deny the allegations contained in paragraph "57" of the Complaint.

58.    Admit the allegations contained in paragraph "58" of the Complaint.

59.    Deny the allegations contained in paragraph "59" of the Complaint.

60.    Deny the allegations contained in paragraph "60" of the Complaint.

61.    Deny the allegations contained in paragraph "61" of the Complaint.

## COUNT II

62.     Defendants repeat and reallege the responses contained in paragraphs 1 through 55 of this answer with the same force and effect as if hereinafter fully set forth herein.

63.     Deny the allegations contained in paragraph "63" of the Complaint.

64.     Deny the allegations contained in paragraph "64" of the Complaint.

65.     Admit that a controversy exists and otherwise deny the allegations contained in paragraph "65" of the Complaint.

66.     Deny the allegations contained in paragraph "66" of the Complaint.

67.     Deny the allegations contained in paragraph "67" of the Complaint, but affirmatively states that a declaratory judgment should issue finding that Plaintiffs are in breach of the Asset Purchase Agreement, the Employment Agreements and Non-Compete Agreements.

68.     Deny the allegations contained in paragraph "68" of the Complaint.

## JURY DEMAND

69.     Paragraph "69" does not contain any factual allegations but merely contains Plaintiffs' jury demand. Therefore, no response is necessary.

## DEFENSES

## FIRST AFFIRMATIVE DEFENSE

70.     Plaintiffs' claims are barred by reason of Plaintiffs' breach of the Asset Purchase Agreement, the Employment Agreements, and Non-Compete Agreements including, without limitation, the acts of Plaintiffs set forth in the Counterclaims below and incorporated herein.

## SECOND AFFIRMATIVE DEFENSE

71.     Plaintiffs claims are barred under the doctrines of unclean hands and estoppel based on the acts of Plaintiffs set forth in the Counterclaims below and incorporated herein.

### THIRD AFFIRMATIVE DEFENSE

72.     Plaintiffs have breached their fiduciary duties and duties of good faith and fair dealing based on the acts of Plaintiffs set forth in the Counterclaims below and incorporated herein.

### FOURTH AFFIRMATIVE DEFENSE

73.     Plaintiff claims are barred from asserting or recovering on any claims against in this action based upon set-off.

### COUNTERCLAIMS

74.     Certain of the Plaintiffs are convicted felons having plead guilty to two class "E" felony counts concerning unpaid sales tax with respect to the operation of their jewelry business. Upon information and belief, under the terms of an agreement with District Attorney for the State of New York, certain of the Plaintiffs agreed to, among other things, pay fines and provide training to its personnel regarding the maintenance of their business records, including records pertaining to sales taxes.

75.     Defendants uncovered subsequent to the closing of an Asset Purchase Agreement with Plaintiffs that their business records were rife with inaccuracies and otherwise failed to comply with Generally Accepted Accounting Principles. Indeed, upon information and belief, Plaintiffs continue to be audited by the New York State Department of Taxation and Finance concerning their failure to pay sales taxes for time periods unrelated to the plea agreement.

#### Count I

#### Breach of Asset Purchase Agreement

76.     Plaintiffs and Defendants entered into an Asset Purchase Agreements dated March 28, 2006.

77.     Article 4 of the Asset Purchase Agreement is entitled "REPRESENTATIONS AND WARRANTIES OF THE SELLER AND PRINCIPAL OWNERS". Section 4.4 of that Article provides

> **4.4     Financial Statements and No Material Adverse Change**. The following have previously been provided to the Buyer: (a) the reviewed balance sheets of the Seller as at December 31, 2003 and December 31, 2004 and the related reviewed statements of income and cash flows for the fiscal years then ended and (b) the unaudited balance sheet of the Seller as at December 31, 2005 and the related unaudited statements of income and cash flows for the twelve (12) months then ended (the reviewed balance sheet of the Seller as at December 31, 2005 being referred to herein as the "**Balance Sheet**"). Such financial statements have been prepared in accordance with generally accepted accounting principles as adopted by the American Institute of Certified Public Accountants ("**GAAP**"), consistently applied throughout the periods indicated. Each balance sheet fairly presents in all material respects the financial condition of the Seller, at the respective date thereof, and the related statements of income fairly present in all material aspects the results of operations for the respective periods indicated. Since December 31, 2005 (the "**Balance Sheet Date**"), there has been no Material Adverse Effect on the Business.

(emphasis supplied).

78.     Article 13 of the Asset Purchase Agreement, entitled "Survival of Representations, Warranties, Covenants and Agreements". Section 13.1 of that article provides, part:

> **13.1     Survival of Representations and Warranties**. Except as otherwise expressly provided, the representations, warranties, covenants and agreements of each of the Seller, the Principal Owners and the Buyer shall survive Closing for a period of twelve (12) months.

79.     Within twelve months from the closing date of the Asset Purchase Agreement, Defendants provided notice of their claim for indemnification in accordance with Section 13.2 of the Asset Purchase Agreement. In particular, pursuant to a letter dated March 27, 2007,

Defendants provided notice of, among other things, Plaintiffs' breaches of their representations and warranties under the Asset Purchase Agreement.

**A.    Plaintiffs Failed To Record A "Reserve For Returns" In Accordance With GAAP.**

80.    Plaintiffs financial statements failed to conform to the requirements of GAAP. Among other things, Plaintiffs' financial statements failed to contain any "Reserve for Returns."

81.    A Reserve for Returns is mandated by the Financial Accounting Standards Board ("FASB"). In fact, FASB's Current Text Section 75 states, in part, "Expected costs or losses relating to sales returns also shall be accrued."

82.    To be in compliance with GAAP, Samba has determined, and its auditors (BDO Seidman LLP) have confirmed, that a Reserve for Returns is mandatory. Samba has fixed its Reserve for Returns in the sum of $938,548. Samba is presently in the process of conducting a routine audit of the company's books and records, and accordingly, the Reserve for Returns may be adjusted as required under GAAP.

83.    As a result of their failure to comply with GAAP, Plaintiffs presented an inaccurate state of Seller's financial condition. Consequently, Samba overpaid Plaintiffs by the amount of the unrecorded Reserve for Returns.

**B.    Plaintiffs Failed To Record Unpaid Commissions In Accordance With GAAP.**

84.    Plaintiffs failed to comply with GAAP respecting commissions due their salespeople.

85.    Subsequent to the closing on the Asset Purchase Agreement, Samba determined that when Plaintiffs recorded a sale to a customer, they failed to record in accordance with GAAP a corresponding liability for commissions owed to Plaintiffs' sales representatives. Because the commissions were not contemporaneously recorded at the time of sale, commission

liabilities were unknown to the Samba at the time of closing. Samba first learned that commissions were owed subsequent to closing when the salespeople contacted Samba to collect for commissions earned before March 28, 2006.

86.     Plaintiffs failed to record $26,057.33 in commissions owed to their salespeople, which Samba paid to them post-closing.

87.     As a result of their failure to record commissions in accordance with GAAP, Plaintiffs presented an inaccurate state of their financial condition. Consequently, Samba overpaid Plaintiffs in an amount not less than $26,057.33 respecting unpaid commissions.

**C.    Plaintiffs Failed To Record Unpaid Operating Expenses
In Accordance With GAAP.**

88.     Prior to the closing on the Asset Purchase Agreement, Plaintiffs incurred operating expenses at their stores in New York and Nevada which expenses include, for example, utilities, security, shipping expenses, and office supplies. Such operating expenses, however, were not recorded in accordance with GAAP and therefore unknown to Samba at the time of closing, but were paid by Samba post-closing. As a result of their failure to properly record such operating expenses, Plaintiffs presented an inaccurate state of their financial condition. Consequently, Samba overpaid Plaintiffs in an amount not less than $55,242.50 respecting such operating expenses.

**D.    Plaintiff Failed to Record Additional Liabilities In Accordance With GAAP**

89.     Plaintiffs improperly recorded on an "over 90 day account receivable schedule" a negative account receivable in the sum of $32,685, which sum, in actuality, is a store credit (i.e., a liability) that was not recorded on Plaintiffs' books and records. Stated differently, Plaintiffs' liabilities were understated in the amount of $32,685. As a result of their failure to properly record such store credit, Plaintiffs presented an inaccurate state of their financial condition.

Consequently, Samba overpaid Plaintiffs in an amount not less than $32,685 respecting such credit.

**E.    Plaintiffs Failed to Record A Las Vegas Sale In Accordance With GAAP**

90.    A Las Vegas sale transaction failed to conform with the requirements of GAAP. In particular, a Las Vegas customer ordered and than promptly cancelled the order of a $130,000 emerald bracelet. The order was improperly recorded as a sale on Plaintiffs' books and records despite the bracelet never having been shipped and despite the absence of a payment. As a result of their failure to properly record such transaction, Plaintiffs presented an inaccurate state of their financial condition. Consequently, Samba overpaid Plaintiffs in an amount not less than $130,000 respecting this transaction.

**F.    Plaintiffs Failed to Fully Disclose All Liabilities to Defendants**

91.    Under the Asset Purchase Agreement, Plaintiffs provided Samba at closing a schedule of customer store credits, however, such schedule failed to disclose all store credits or the correct amount of such credits. In particular, Samba post-closing became aware of a $14,500 store credit in favor of a customer of Plaintiffs. Additionally, Plaintiffs, at times, did not issue a credit to a customer which included the applicable tax. Therefore, Plaintiffs' store credits pertaining to sales tax were understated. Samba became aware of the understated credits in the amount of $2,954.72 when its customers began utilizing them post-closing. Samba assumed these liabilities post-closing. As a result of their failure to properly record the store credits, Plaintiffs presented an inaccurate state of their financial condition. Consequently, Samba overpaid Plaintiffs in an amount not less than $17,454.72.

**G.    Plaintiffs Failed To Record Special Orders In Accordance With GAAP**

92.    Samba further seeks $26,500 based upon Plaintiffs' action of booking pre-closing special orders despite the fact that such orders were not shipped until post-closing. As a result of their failure to properly record the special orders, Plaintiffs presented an inaccurate state of their financial condition. Consequently, Samba overpaid Plaintiffs in an amount not less than $26,500 with respect to such special orders.

**H.    Plaintiffs Failed To Pay Rent To The Bellagio**

93.    Plaintiffs, as tenants, were parties to a lease with the Bellagio Hotel, their Las Vegas, Nevada landlord. As a result of an internal audit conducted post-closing by Bellagio of rents paid by Plaintiffs prior to the closing, Bellagio determined that Plaintiffs underpaid $20,833 for August 2005 rent. While Samba recognizes that Bellagio issued an estoppel certificate in connection with the Asset Purchase Agreement, Bellagio nevertheless demanded payment from Samba, which it paid. Accordingly, Samba demands indemnification in a sum not less than $20,833 as a result of Plaintiffs' failure to properly pay pre-closing rent to Bellagio.

94.    By reason of the foregoing, Samba is entitled to an award of damages against Plaintiffs in an amount to be determined at trial, but in no event, less than $1,270,895.55.

**Count II**

**Fraud In The Inducement**

95.    Defendants repeat and reallege the responses contained in paragraphs 74 through 94 of this counterclaim with the same force and effect as if hereinafter fully set forth herein.

96.    Defendants relied upon the representations and warranties contained in the Asset Purchase Agreement.

97.    Plaintiffs knew that the representations and warranties were false to the extent that they represented and warranted that the financial statements were prepared in accordance with GAAP.

98.    Plaintiffs' representations and warranties proved to be false, and as a result, Defendants have suffered monetary damages.

99.    By reason of the foregoing, Defendants are entitled to an award of damages against Plaintiffs in an amount to be determined at trial, but in no event, less than $1,270,895.55.

### Count III

### Fraud

100.    Defendants repeat and reallege the responses contained in paragraphs 74 through 99 of this counterclaim with the same force and effect as if hereinafter fully set forth herein.

101.    Immediately after the asset purchase, Samba began identifying items of inventory purchased from the Leightons which appeared to have been purchased by the Leightons from third parties at unusually high prices.  Among the items so identified was item # 06358, an "Indian clip, ruby, emerald, dia, enamel & yellow gold nat pearls" with a purported cost of $40,000.

102.    On subsequent investigation, Samba discovered that the bulk of item #06538 had been supplied to Plaintiffs for $5,500.  Although minor modifications had been made to such item, it is clear that Plaintiffs padded their costs to show an improper state of Plaintiffs' financial affairs.  As a result their fraudulent padding, Samba was damaged in an amount not less than $34,500.

103.    By reason of the foregoing, Samba is entitled to an award of damages in an amount to be determined at trial, but in no event less than $34,500.

## Count IV

### Unjust Enrichment

104.     Defendants repeat and reallege the responses contained in paragraphs 74 through 103 of this counterclaim with the same force and effect as if hereinafter fully set forth herein.

105.     At the time Plaintiffs provided financial statements to Samba, Plaintiffs knew that they were not prepared in accordance with GAAP and that they materially misstated the financial condition of the business.

106.     Samba relied upon such representations and warranties which proved to be false, and as result, have suffered monetary damages.

107.     As a result, Plaintiffs were unjustly enriched by Samba's overpayment of the company's assets in an amount to be determined at trial, but in no event, less than $1,270,895.55.

### Count V

### Breach of Fiduciary Duties

108.     Defendants repeat and reallege the responses contained in paragraphs 74 through 107 of this counterclaim with the same force and effect as if hereinafter fully set forth herein.

109.     Pursuant to an Employment and Non-Compete Agreements each dated March 28, 2006, Samba agreed to employ Fred and Mara Leighton in accordance with and subject to the limitations contained within such agreements.

110.     Fred and Mara Leighton were employees of Samba, and as such, owed fiduciary duties to Samba, including the duties of loyalty and due care.

111.     Notwithstanding such duties, Fred Leighton attended trade shows, and lent his name and reputation to Samba's competition by, among other things, working with Samba's competition and otherwise making disparaging remarks against Samba - - his employer. Fred

Leighton also met with Samba's customers and discouraged such customers from purchasing Samba's jewelry as being overpriced. In addition, despite his employment arrangement with Samba, Fred Leighton was not authorized by Samba to incur debt on its behalf. Without Samba's consent, Fred Leighton, nevertheless, incurred debt on behalf of Samba. In addition, Mara Leighton wrongfully obtained confidential information from Samba, including customer lists.

112. Samba's business reputation and good was significantly harmed as a result of Fred and Mara Leighton's breaches of duties that they owed to their employer.

113. By reason of the foregoing, Samba is entitled to an award of damages against Fred and Mara Leighton in an amount to be determined at trial, but in no event less than $5,000,000.00.

WHEREFORE, Defendants respectfully request that this Court grant judgment in its favor as follows:

1. That the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice.

2. On Defendants' First Count, an award of damages in an amount to be determined at trial, but in no event less than $1,270,895.55.

3. On Defendants' Second Count, an award of damages in an amount to be determined at trial, but in no event less than $1,270,895.55.

4. On Defendants' Third Count, an award of damages in an amount to be determined at trial, but in no event less than $34,500.00.

5. On Defendants' Fourth Count, an award of damages in an amount to be determined at trial, but in no event less than $1,270,895.55.

6. On Defendants' Fifth Count, an award of damages in an amount to be determined at trial, but in no event less than $5,000,000.00.

7. That the Court award Defendants all costs and expenses and such other relief as this Court deems just and proper.

Dated: New York, New York
      October 15, 2007

                    KATSKY KORINS LLP
                    Attorneys for Defendants

                    By: _____
                      Robert A. Abrams, Esq.
                      605 Third Avenue
                      New York, New York  10158-0038
                      (212) 953-6000

EXHIBIT "B"

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
Tel:  212-592-1400
Fax: 212-592-1500
Joshua J. Angel, Esq.
Paul Rubin, Esq.

Attorneys for Defendant Fred Leighton Holding, Inc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FRED LEIGHTON, LTD., FRED LEIGHTON,      :
LLC, FRED LEIGHTON AND GLORYA           : Index No. 602533/07
LEIGHTON AS TRUSTEES OF THE FRED        :
LEIGHTON REVOCABLE TRUST, FRED          :                Civil Action
LEIGHTON AS TRUSTEE OF THE FRED         :
LEIGHTON ANNUITY TRUST, FRED            :
LEIGHTON AND MARA LEIGHTON,             :        **NOTICE OF FILING OF**
                                        :        **NOTICE OF REMOVAL**
                     Plaintiffs,        :
                                        :
                                        :
        -against-                       :
                                        :
                                        :
FRED LEIGHTON HOLDING, INC. (f/k/a      :
SAMBA I, INC.) and RALPH ESMERIAN,      :
                                        :
                     Defendants.        :
                                        ::
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO:    THE CLERK OF THE SUPREME COURT:

            PLEASE TAKE NOTICE that the within matter has been removed on May ___,

2008 to the United States District Court for the Southern District of New York based upon the

Notice of Removal (the "Notice") annexed hereto as Exhibit "A".   Upon filing the Notice,

Defendant Fred Leighton Holding, Inc. has effected removal pursuant to 28 U.S.C. §§ 1441,

1446 and 1452.

HF 4129720v.1 #13526/0002

Dated:  May _____, 2008

Respectfully submitted,

HERRICK, FEINSTEIN LLP
Attorneys for Defendant Fred Leighton Holding,
Inc.


By:     _____
      Joshua J. Angel, Esq.
      Paul Rubin, Esq.
     2 Park Avenue
     New York, New York 10016
     (212) 592-1400